SATZ, P. J., and SMITH, J., concur.

Janet Sue SMITH, et al.,
Plaintiffs-Appellants,

v.

HOMESTEAD DISTRIBUTING CO., a corporation, and Handy Manufacturing Company, Defendants-Respondents,

v.

Thomas F. JOHNSON and Monsanto Chemical Company, Defendants-Respondents.

No. 11537.

Missouri Court of Appeals, Southern District, Division Three.

Oct. 22, 1981.

Motion for Rehearing or to Transfer to Supreme Court Overruled Nov. 16, 1981.

Application to Transfer Denied Jan. 18, 1982.

Edward P. McSweeney, Padberg, McSweeney, Slater, Merz & Reid, St. Louis, for plaintiffs-appellants.

Bernard C. Rice, King E. Sidwell, Blanton, Rice, Sickel, Gilmore & Winchester, Sikeston, for defendant-respondent Handy Manufacturing Co.

James E. Reeves, Ward & Reeves, Caruthersville, Fred B. Whalen, Daniel G. Tobben, Whalen, Danis, Tobben & Murphy, St. Louis, for defendant-respondent Homestead Dist. Co.

John W. Hopkins, Jr., Banta & Hopkins, Charleston, for defendant-respondent Thomas F. Johnson.

John L. Oliver, Jr., Oliver, Oliver, & Jones, P. C., Cape Girardeau, for defendant-respondent Monsanto Chemical Co.

PER CURIAM.

This is a suit for money damages brought by Janet Sue Smith and her two minor children as the result of the death of Troy Smith, husband/father of plaintiffs. A jury verdict was returned in favor of defendants Handy and Homestead and judgment was entered affirming the jury verdict. Plaintiffs appeal. We affirm.

The basic facts of the case are that on April 6, 1976, Troy Smith was employed by defendant Monsanto Chemical Company (Monsanto). On that day, Smith was operating a Handy Power Washer, manufac-

tured by defendant Handy Manufacturing Company (Handy), and sold and distributed by defendant Homestead Distributing Company (Homestead), when he suddenly screamed, collapsed and died. At the time of his death, Smith's clothing and shoes were wet and the ground in the area where he was working was wet. Plaintiffs' theory of the case was that Smith died from electric shock caused by the negligence of Handy in failing to properly design the washer so as to prevent water from reaching its motor while in use and the negligence of Homestead in failing to furnish the washer to Monsanto with a properly grounded electric plug.

After service of process, Homestead and Handy filed third-party petitions against Monsanto and one of its employees, Thomas F. Johnson. The petitions alleged that Johnson, acting as an agent, servant, and employee of Monsanto, negligently altered the electric outlet plug of the washer by removing the grounding prong of the plug, and later, by replacing the original plug with a plug that did not contain a grounding prong. Homestead and Handy prayed that if they were held liable to plaintiffs, they were entitled to be indemnified by Monsanto and Johnson for any judgment rendered against them.

Johnson and Monsanto filed motions to dismiss the third-party petitions. Plaintiffs did not join in the motions. The motions to dismiss were overruled, responsive pleadings were filed to the third-party petitions, and the case proceeded to trial.

■ On appeal, plaintiffs rely on three points of claimed error, the first being that the trial court erred in permitting Monsanto to be joined as a third-party "because the supreme court has ruled since the trial of this case that an employer has no such third-party liability, and this is a substantive change in the law requiring a new trial." While we have difficulty in understanding from this statement why plaintiffs contend the joinder prejudiced their rights to a fair trial, plaintiffs, by failing to object to the request for joinder, via a motion to dismiss the third-party petitions, by failing to object to the joinder at time of trial, and by failing to raise the issue in their motion for new trial, waived their right to now complain of the alleged improper joinder. This allegation of error was not preserved for appellate review. Rule 78.07, V.A.M.R.; *Cryts v. Ford Motor Co.*, 571 S.W.2d 683, 690 (Mo.App.1978). The point is denied.

■ Plaintiffs' second point is that the trial court erred "in not allowing them to call defendant Homestead's expert John Senne as a witness, and to inquire concerning his employment and payment by Homestead, and the results of his examination of the washer, or to comment on Homestead's failure to call him, because the interest or bias of a witness is always a matter for disclosure to the jury, and Senne was more available to Homestead than plaintiffs, so that failure to offer him was a proper subject for comment in plaintiffs' final argument."

Mr. Senne, an engineer, had been retained and paid by Homestead to examine the washer after the accident. He was deposed by plaintiffs' attorney and testified in his deposition, which was not introduced in evidence in this case, that the washer was leaking electrical current and was hazardous. Senne was subpoenaed as a witness by plaintiffs, appeared in answer to the subpoena and was available to testify as a witness, if so requested.

Near the close of plaintiffs' case, and out of the hearing of the jury, plaintiffs' counsel announced his intention to call Senne as plaintiffs' witness. The attorney for Homestead objected to plaintiffs' counsel eliciting from Senne, on direct examination, the fact that he had been employed by Homestead to test the washer. Our search of the record does not indicate any ruling by the trial court on the objection. However, plaintiffs' attorney, in an offer of proof, stated that the court had ruled that he would not be permitted to ask Senne, on direct examination, whether he had been retained by Homestead to examine the washer.

There is nothing in the record to clearly show that the offer of proof was denied and

nothing in the record to show that plaintiffs' counsel ever asked to be able to comment in closing argument that Homestead had failed to call Senne as their witness, or that such request was denied by the trial court. Plaintiffs' point lacks factual support. Even if it did have factual support, plaintiffs could not have called Senne as their witness and elicited from him, on direct examination, that he had been employed by Homestead. *State ex rel. State Highway Commission v. Kalivas*, 484 S.W.2d 292, 294 (Mo.1972). Further, Senne was a witness equally available to plaintiffs. Being so, plaintiffs could not, in closing argument, comment on the failure of Homestead to call him as their witness. *State ex rel. State Highway Comm'n v. Moulder*, 547 S.W.2d 882, 885 (Mo.App. 1977). See also *Bean v. Riddle*, 423 S.W.2d 709, 720–721 (Mo.1968). The point is denied.

Plaintiffs' final point is that the trial court erred in "locking up the jury for deliberation at 10:34 p. m. in the evening on the fourth day of trial of this complex litigation, after they had been present since 9:00 a. m., because, as demonstrated by the fact that the verdict was returned approximately one hour later, these circumstances represented a forced, coerced and unfair verdict."

Plaintiffs' counsel candidly admits that he finds no case law supporting his position and we find none. Trial courts have a great deal of discretion as to determining the length of time a jury may be kept together on any given day, *Nash v. Plaza Electric, Inc.*, 363 S.W.2d 637, 641 (Mo.1962), and what amounts to an improper coercion of a verdict by the trial court depends generally on the facts of the case being tried.

At the close of the evidence, and after preparation of the instructions, the trial judge gave the jury the option of deliberating on the case the evening of June 19, or recessing until the following morning. The jury chose to continue. Plaintiffs did not object to the continuing of deliberations. There is no evidence in the record that the trial court coerced the jury to continue deliberations or to return a verdict that evening. The point is denied.

In view of the disposition we have made of this appeal, discussion of the motion to dismiss the appeal, filed here by Johnson and Monsanto, and taken with the case, is unnecessary.

The judgment is affirmed.

All concur.